(107 So. 590)

No. 25393.

**FULLILOVE v. CENTRAL STATE BANK et al.**

(March 1, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Corporations ⊚⟞668(4).**

In view of Act No. 267 of 1914, § 23, where foreign corporation has designated agents for service within state, service should be made by delivery of process to one of them.

**2. Corporations ⊚⟞668(5).**

In view of Act No. 179 of 1918, § 1, par. 6 (a, b), to authorize service of process on general manager of foreign corporation having designated agents in state, it should appear that agents could not be found.

**3. Corporations ⊚⟞670(2).**

A foreign corporation admitted to do business in the state cannot be proceeded against by attachment on ground of nonresidence (Act No. 267 of 1914, § 23; Code Prac. art. 240).

**4. Judgment ⊚⟞17(11).**

Where service of citation on foreign corporation and proceeding by attachment and constructive service were void, judgment rendered thereon, being without jurisdiction of defendant, was void.

**5. Judgment ⊚⟞25—Payments made by judgment-debtor on judgment with knowledge of defects therein precluded it from attacking judgment and seizure thereunder as void.**

Where judgment against foreign corporation was void because court had no jurisdiction of judgment-debtor, payments made on judgment with knowledge of defects therein precluded debtor from attacking judgment and seizure thereunder on ground that it was rendered without jurisdiction.

**6. Receivers ⊚⟞70.**

Possession of receiver, if effective as of date of commencement of receivership proceedings, does not date back beyond commencement of valid proceedings.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Suit by S. C. Fullilove, receiver, against the Central State Bank and others. Judgment for defendants, and plaintiff appeals. Affirmed.

J. M. Grimmet, of Shreveport, for appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellees.

OVERTON, J. In February, 1920, the Central State Bank, one of the defendants herein, instituted suit against the Ansonia Oil

Company, a corporation organized under the laws of the state of Delaware, for $15,000, with 6 per cent. per annum interest thereon from December 8, 1919, and 10 per cent. additional as attorneys' fees, less a credit of $2,000 paid December 15, 1919. It alleged that the Ansonia Oil Company was a nonresident of this state, but had property in the parish of Caddo; that a writ of attachment should issue against said company; and that a curator ad hoc should be appointed to represent it. The prayer of the petition was in accordance with the allegations.

The writ of attachment issued. Process, including citation, was served by posting a copy thereof on the courthouse door, and by delivery of a copy of the petition and citation to the curator ad hoc. The sheriff executed the writ of attachment by seizing certain property in the parish of Caddo belonging to the Ansonia Oil Company. No appearance was made in the suit by defendant or the curator ad hoc, appointed to represent it, and judgment by default was rendered, on May 1, 1920, in favor of the bank and against the Ansonia Oil Company, the judgment being in rem, for the amount sued for, including the interest and attorneys' fees stated, and sustaining the writ of attachment with recognition of the bank's privilege as attaching creditor.

A writ of fieri facias was issued from the judgment rendered, and the sheriff seized thereunder, and advertised for sale, the property which had been seized under the writ of attachment.

Shortly after the sheriff had seized and advertised for sale said property, to wit, on May 18, 1920, original proceedings were instituted in the district court of Dallas, Tex., to place the Ansonia Oil Company in the hands of a receiver, and on the same day S. B. Scott was appointed receiver for said company. Three days later a bill in equity was filed in the United States District Court for the Western District of Louisiana praying for the appointment of an ancillary receiver. On the same day, E. R. Bernstein and S. B. Scott were appointed receivers by said court, and a restraining order was issued by the United States District Court, restraining the sheriff of the parish of Caddo from proceeding further with the execution of the judgment obtained by the bank. On June 2, 1920, the United States District Court for the Western District of Louisiana entered an order vacating the order appointing receivers, and ordered the Ansonia Oil Company to show cause on June 12, 1920, why a receiver should not be appointed for it, but continued the restraining order issued against the sheriff of the parish of Caddo in full force and effect. On June 10, 1920, the district court at Dallas, Tex., where the original proceedings for the appointment of a receiver were instituted, set aside the order appointing one, and two days later a motion was filed in said court for a rehearing. On October 30, 1920, that court, acting on the motion for a rehearing, appointed S. B. Scott receiver. On November 13, 1920, a supplemental bill was filed in the United States District Court for the Western District of Louisiana, setting up the fact that a receiver had been appointed by the district court at Dallas, Tex., and praying that one be appointed in the Western district of Louisiana. The Ansonia Oil Company consented to the appointment. The court on the same day appointed S. C. Fullilove receiver. On December 1, 1920, the Central State Bank filed a motion in the United States District Court for the Western District of Louisiana praying that the restraining order, issued on May 21, 1920, restraining the sheriff of the parish of Caddo from proceeding further with the execution of the judgment obtained by it, be set aside. The court, after hearing the motion, vacated the order, but reserved to the receiver the right to attack the judgment obtained by the Central State Bank in a proper proceeding in a proper court.

On December 16, 1920, S. C. Fullilove, the receiver appointed by the United States District Court for the Western District of Louisiana, instituted the present suit for the purpose of annulling the judgment rendered in favor of the Central State Bank and against the Ansonia Oil Company and to obtain a writ of injunction restraining the sheriff of the parish of Caddo from selling the property seized under said judgment.

The grounds set forth for annulling the judgment are as follows:

"(a) That the Ansonia Oil Company was never cited to appear and answer the said cause of action, as no legal service was made upon its designated agents for service of process.

"(b) That the appointment of a curator ad hoc upon whom service of process was made was without authority of law, and said service is null and void and of no effect and in no manner brought the Ansonia Oil Company into court.

"(c) That the Ansonia Oil Company, having complied with all laws of the state of Louisiana, and having been given a certificate to do business in this state and having appointed agents for the service of process, was and is for all intents and purposes a resident of the state of Louisiana and an attachment on the grounds of nonresidence is null and void.

"(d) That no citation having been served upon the Ansonia Oil Company, no legal or valid judgment could be rendered against said corporation, and that the judgment as rendered herein is null and void, and the said seizure by said sheriff is illegal."

On the trial of the case, it was admitted that legal process was served by delivery thereof to the curator ad hoc, appointed to represent the Ansonia Oil Company, and by posting copies of the process on the courthouse door. It appears from the evidence that service was made also on the general manager of the company, though none was made on any of the agents of the company for the service of legal process, appointed by it; nor does it appear that any effort was made to serve the process on any of such agents. It was admitted that the Ansonia Oil Company was a foreign corporation; that, at the time the proceedings by attach-

ment were begun against it, the company had been admitted to do business in this state; had fixed its domicile in the city of New Orleans, and had appointed as their agents, upon whom legal process could be served, several persons residing in that city.

[1] From the foregoing it appears that, when the Central State Bank instituted suit against the Ansonia Oil Company, caused a curator ad hoc to be appointed to represent it, and service to be made by posting and by delivery of process to the curator ad hoc, the Ansonia Oil Company had complied with the laws of this state, and had designated an agent, or agents, upon whom service of legal process against it could be made. See, in this connection, section 23 of Act 267 of 1914.

[2] Since the company had designated agents in this state upon whom legal process should be served, the service of process should have been made, not constructively by posting on the courthouse door, but by delivery of process to one of the agents named. It is true that service was made by delivery of process to the general manager of the company in this state, but as observed by the trial judge it does not appear that one of the several agents for the service of process, named by the company, could not be found, and this should have appeared, in order to have authorized that service. See section 1 (par. 6, a and b) of Act 179 of 1918.

[3] As relates to the effort to vest the trial court with jurisdiction by means of attachment and constructive service, it may be observed that the Ansonia Oil Company, having been admitted to do business in this state, after having complied with the laws of the state, including the appointment of an agent for the service of process, could not be proceeded against, by attachment, on the ground that it was a nonresident. This is so, because the Ansonia Oil Company, having complied with those laws, was authorized "to exercise the same powers, rights, and privileges as are accorded to similar domestic corporations,"

organized under Act 267 of 1914. See section 23, Act 267 of 1914. The effect of the provision quoted, which is taken from the section cited, was to take the corporation out of article 240 of the Code of Practice, permitting attachments against nonresidents. This appears from the ruling made in Burgin Bros. & McCane v. Barker Baking Co., 95 So. 227, 152 La. 1075, where, in discussing Act 120 of 1920, which contains a provision similar to that quoted above from section 23 of Act 267 of 1914, and which is nothing but an amendment and re-enactment of that section, it was said that—

"The provisions of section 23 of Act 120 of 1920, in conferring upon corporations that comply with the requirements of the statute the authority to exercise, 'the same powers, rights, and privileges as are accorded to similar domestic corporations organized under this act,' must be given a broader interpretation than as contended for by counsel for plaintiffs, that of merely permitting the exercise of the usual corporate powers, rights, and privileges. The statute not only accords these powers, rights, and privileges, but also under the broad ·construction thereof the right and privilege to the corporation of being relieved of the harassment and inconvenience flowing from the attachment of its property when full and adequate remedy to the suitor by action in personam is provided for."

[4] Our conclusion, as was that of the trial judge, is that the service of citation in this case was null and void; that the proceeding by attachment and constructive service was null; that the judgment attacked was, in effect rendered without citation, and hence without the acquisition of jurisdiction over the person or property of the defendant in the suit. It follows, therefore, that in our opinion the judgment was null and void when rendered.

[5, 6] The Central State Bank has made no appearance in this court. However, in the court below it contended, through its curator ad hoc, that, in the event it should be held that the judgment was null and void, when rendered, nevertheless its nullity should not be decreed, because the Ansonia Oil Company, through its duly constituted officers, has recognized the validity of the judgment and has ratified and confirmed it by requests to delay its execution and by making payments on the judgment.

In this connection, the evidence shows that in June, 1920, the Ansonia Oil Company, through its officers, one of them being its president, made payments on the judgment, amounting to $3,600; the payments having been made, we think, with full knowledge of the defects in the judgment. When the payments were made, the orders appointing receivers in Texas and in this state had been vacated on the ground that the original proceedings for the appointment of a receiver were defective, in that they should not have been instituted in Texas, but at the domicile of the corporation in Delaware, and it was not until some four or five months after the payments had been made that receivers were appointed, on rehearing in Texas, and on an amended bill in this state, and then only upon the suggestion or with the concurrence of the Ansonia Oil Company.

The receiver contends that, under the foregoing facts, the judgment attacked herein should not be held to have been validated or confirmed. His contention is that, as the receivership proceedings were pending at the time, the Ansonia Oil Company had no right to dispose of any of its oil, which it did, and make the payments on the judgment; that his possession of the assets dated back to the date of the institution of the proceedings for the appointment of a receiver; and that he cannot be deprived of the assets of the company in any such manner, nor can the judgment and the seizure that was made be validated and confirmed in any such manner, and be held estopped from attacking them. The receiver cites, in support of his contention, Wiswall v. Sampson, 14 How. (U. S.) 52, 14 L. Ed. 322, and other authorities. The trial judge thought that the authorities cited were not applicable to the facts in this case, especially as the property in this instance had

never been taken into the possession of the court appointing the receiver, and that the affairs of large corporations would be paralyzed if their officers could be divested of all authority by the mere filing of an application for a receiver. If we grant, however, that such possession as the receiver may have obtained dates back, still we are not of the opinion that such possession dated back any further than the time valid proceedings were pending for the appointment of a receiver in this state, and that, by reason of the error above mentioned, no such proceedings were pending, either in this state, or in Texas, until the error was corrected. We see no reason why we should not hold that the effect of the payments is to preclude an attack on the judgment rendered and on the seizure made thereunder. In so far as we are able to ascertain, the payments were made in good faith.

Before closing, we may say that the preliminary injunction, prayed for herein, was never issued, and we understand from the record that, while this suit was pending, and after the vacating of the restraining order by the United States District Court that issued it, the property seized by the bank was sold by the sheriff.

The judgment appealed from is affirmed.